UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SIMON A. LUNDY, Sr.,
    Plaintiff,

v.    06-2215

ROBERT ANDRE ALVARADO,
    Defendant.



FILED
OCT 29 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

BRIEF IN SUPPORT OF APPEAL

Public defenders cannot generally be sued under § 1983 or § 1331 because they are not considered "state actors" while "performing a lawyers traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 US 312, 324-25 (1981).

Attorney Alvarado was not performing a lawyers traditional function as counsel for Lundy. Alvarado was terminated by a Court order in Lundy's criminal case. See minute order 07/22/2004 U.S. v. Lundy, 03-CR-10064 (C.D. Ill. 2006). Alvarado was not reappointed after being terminated from Lundy's case.

Ironically, on appeal, District Judge Michael P. McCuskey stated that Alvarado was reappointed to represent Lundy after being terminated a year prior. See Opinion Lundy v. Alvarado, 06-2215 (C.D.Ill. 17 April 2007).

District Court Judge Michael M. Mihm terminated Alvarado from Lundy's case. See Appendix.

Alvarado was enlisted by Lundy's new attorney Thomas Iben, depriving Lundy of his Fifth Amendment Right to Due Process under the law. See Brown v. Joseph, 463 F.2d 1046 (3rd Cir. 1972) ("Prosecutors, state and city attorney's are generally immune under the Civil Rights Act, unless their acts are clearly outside the scope of their jurisdiction."). Alvarado was clearly outside the scope of his jurisdiction when he advised Lundy to avoid trial and plead guilty. See Appendix.

Lundy pled guilty and was sentenced to 188 months without any benefits from waiving his rights to a trial. As a direct result of Lundy not receiving any benefit from waiving his rights to a trial, a public safety factor was placed on him by the Federal Bureau of Prisons because of the sentence of 188 months. The public safety factor has denied Lundy the opportunity to pay his final respects to the death of his mother, Rita Ann Lundy (08/11/1940 to 09/11/2007). The effect of this situation has caused Lundy distress, emotional pain, and suffering.

Therefore, Lundy is requesting monetary relief in the sum of Five Hundred Thousand Dollars.

Respectfully submitted,

*Simon Lundy*
Simon Lundy

25 October 2007

APPENDIX

APPENDIX

APPENDIX

```
                                                                    1

              IN THE UNITED STATES DISTRICT COURT      FILED
              FOR THE CENTRAL DISTRICT OF ILLINOIS
                                                       JUL 24 2006

                                                     JOHN M. WATERS, Clerk
                                                      U.S. DISTRICT COURT
       UNITED STATES OF AMERICA,      )             CENTRAL DISTRICT OF ILLINOIS
                                      )
                      Plaintiff,      ) Criminal No.
                                      ) 03-10064
              vs.                     ) Peoria, Illinois
                                      ) May 12, 2006
       SIMON LUNDY,                   )
                                      )
                      Defendant.      )


              HEARING ON MOTION TO WITHDRAW GUILTY PLEA


                           BEFORE:

                    HONORABLE MICHAEL M. MIHM
                    United States District Judge


                         APPEARANCES:

                    K. TATE CHAMBERS, ESQ.
              Assistant United States Attorney
                 200 Fulton Street, Suite 400
                    Peoria, Illinois  61602
            (Appeared on Behalf of the Government)



                    JEFFREY FLANAGAN, ESQ.
              411 Hamilton Boulevard, Suite 1708
                    Peoria, Illinois  61602
            (Appeared on Behalf of the Defendant)




                    Karen S. Hanna, C.S.R.
                  U.S. District Court Reporter
                  Central District of Illinois
       Proceedings recorded by mechanical stenography, transcript
       produced by computer
```

1  A    My name is Robert Alvarado. I'm a lawyer. I work
2  for the Federal Public Defender.
3  Q    Mr. Alvarado, drawing your attention to September 16
4  of 2005, did you have occasion to meet with the defendant,
5  Simon Lundy?
6  A    Yes, I did.
7  Q    And where did that meeting take place?
8  A    It took place in the first floor cell block here in
9  the courthouse.
10 Q    Who was present during that meeting?
11 A    Myself, Tom Iben and the defendant. Nobody else was
12 in the cell block.
13 Q    Had you previously represented Mr. Lundy in this
14 matter?
15 A    Yes, I had.
16 Q    And did you withdraw as counsel?
17 A    I was forced to withdraw as counsel for Mr. Lundy.
18 Q    What was the reason for that?
19 A    There was a conflict of interest that the Government
20 raised at the time.
21 Q    And did that conflict of interest have to do with
22 other individuals involved in the same conspiracy?
23 A    Yes. It involved the Government's informant.
24 Q    Why did you meet with Mr. Lundy on the morning of
25 September 16?

1  A   Because I had represented Mr. Lundy before and we had
2  a very good rapport and at that time when I represented
3  him, the Government's case was considerably weaker.
4  Mr. Lundy's lawyer, Tom Iben, had been talking with me
5  about the Government's case and I realized that it had
6  gotten quite a bit different.  Mr. Iben had advised me
7  that Mr. Lundy constantly brought my name up and referred
8  to the fact that we had been preparing to go to trial, so
9  I felt in order to set the record straight with Mr. Lundy,
10 I wanted him to know that even though I felt comfortable
11 going to trial with him at the time, that I felt the
12 Government's case had gotten a lot stronger and that I
13 would not feel comfortable with him going to trial, that
14 he was better off trying to work a plea agreement with the
15 Government.
16 Q   Did Mr. Iben request of you that you meet with
17 Mr. Lundy?
18 A   I think I mentioned the idea to him and he accepted
19 it, but the way -- we had talked over the course of
20 several conversations about Mr. Lundy's case and we both
21 agreed that it was a good idea.
22 Q   When you met with Mr. Lundy, that was the morning of
23 September 16?
24 A   Yes.
25 Q   And do you recall how long that meeting lasted?

```
 1   A      At least an hour.
 2   Q      Did you speak with Mr. Lundy during that time period?
 3   A      Yes.
 4   Q      What did you talk to him about?
 5   A      We talked with him about the strength of the case,
 6   the strength of the Government's case.  We talked about
 7   what would be expected of him if he were to cooperate with
 8   the Government.  We talked a little bit about possible
 9   sentences, but Mr. Iben was much more familiar with that
10   than I was.  But the bottom line was Mr. Lundy did not
11   want to accept a plea agreement, and towards the end of
12   our conversation we were talking about how Mr. Iben could
13   defend Mr. Lundy at trial.
14   Q      Did Mr. Iben and Mr. Lundy get into an argument?
15   A      There was an argument, yes, at one point.
16   Q      And what was the nature of that?  What did that
17   consist of?
18   A      I don't recall precisely what the argument was.  I
19   know that Mr. Iben got upset.  They -- it was a very brief
20   argument and then I believe then we settled back down and
21   had a discussion about the facts and the law of the case.
22   Q      Did you have any discussions with Mr. Lundy regarding
23   possible plea agreements, specifics as far as plea
24   agreements?
25   A      We may have, but I don't recall specifics.
```

```
 1    another had been exposed to every one of the terms in that
 2    plea agreement and had had the opportunity to discuss them
 3    with his lawyer.  I don't really see that that's -- this
 4    record doesn't support a finding that that was deficient
 5    or an unreasonable period of time.
 6            Sub-paragraph G:  That he was ineffective.
 7    Mr. Iben failed to maintain contact with the defendant to
 8    apprise him of the case and prepare adequately for trial
 9    or the potential consequences of the plea agreement.
10    Simply not supported by this record period.
11            Trial counsel failed to adequately explore and
12    follow up on potentially exculpatory evidence before
13    recommending that the defendant plead guilty.  There's
14    some mention of that in this record concerning this
15    conversation that was sent to an expert witness, but I
16    have no real sense at this point that that had any -- I
17    just simply would be left to speculate that it had any
18    particular significance in the total evidence of the case,
19    so I can't make anything of that.
20            Trial counsel failed to adequately explain the
21    plea agreement, potential sentences, sentencing
22    consequences.  I don't think this record supports that
23    finding based on the testimony given under oath here.
24            There is one part of this that I do find a
25    little bit troubling and that's the fact that Mr. Alvarado
```

1  went to talk to him. And I need to preface my comments by
2  saying that I've been on the bench for 24 years. Mr. Iben
3  has been appearing here for many of those years and
4  Mr. Alvarado has been appearing here ever since he went
5  with the Federal Defender's Office, which is quite a long
6  time, and I have never found either of them in their
7  representation of clients to be anything other than
8  aggressive and effective and, as officers of the court,
9  highly ethical and I still have that opinion.
10        I do believe that it may have been a mistake of
11 judgment for Mr. Alvarado to go and talk to him since he
12 had been removed from the case on the basis of a conflict.
13 It seems to me that there is at least arguably an
14 appearance of some wrongdoing here, even though in
15 listening to the substance of it, the explanation for why
16 he went, the substance of what happened while he was
17 there, I do not find that there was anything about that
18 that ended up being inappropriate. As I understand it,
19 the primary purpose of him going was to explain, in
20 response to apparently Mr. Lundy's comments to his lawyer,
21 repeated comments about Mr. Alvarado saying this or that,
22 to have him explain why the circumstances had changed.
23 But because he had been in the case and now was out of the
24 case, I don't think it probably should have happened. I
25 don't, however, believe there is anything about it that